IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVE BRYANT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 2:12-cv-562-MEF |
| ) | (WO–Publish) |
| COMMUNITY BANKSHARES, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #34) filed by Defendants Community Bankshares, Inc. ("Community Bankshares"), Steve Adams ("Adams"), Edwin B. Burr ("Burr"), Elton Collins ("Collins"), and Wesley A. Dodd ("Dodd") (collectively, "Defendants").[1]  Having considered the motion, the parties' arguments, and the relevant pleadings, the Court finds that the motion is due to be GRANTED.

**I. STATEMENT OF FACTS[2]**

Prior to 2010, Community Bankshares was the holding company of several banks,

---

[1] This motion was also filed on behalf of "Unknown Defendants A, B, C, D, E, and F who served as plan fiduciaries." However, the Court will disregard this, as there is no fictitious party pleading in federal court. *Childress v. Walker*, 943 F. Supp. 2d 1332 n.2 (M.D. Ala. 2013) (citing *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court.")).

[2] At the motion to dismiss stage, the Court must take the allegations in the amended complaint as true unless they "defy reality." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

including Community Bank & Trust ("CBT") in Cornelia, Georgia.  CBT was the primary asset held by Community Bankshares prior to January 29, 2010.  Community Bankshares derived the majority of its income from CBT's operations.  On January 29, 2010, however, the Georgia Department of Banking and Finance closed CBT and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver.  Plaintiffs Dave and Vikki Bryant (collectively, "Plaintiffs" or the "Bryants") are employees of Community Bank & Trust Alabama.

The Bryants invested in Community Bankshares's Employee Stock Option Plan (the "Plan").[3]  The Plan was invested entirely in Community Bankshares's stock and cash, although the Trustee of the Plan had discretion to diversify a portion of the plan in other investments.  On February 25, 2009, Community Bankshares sent a notice to Dave Bryant that he had the right to diversity 50% of his account balance in the Plan.  A similar notice was also sent to Vicki Bryant that same day, informing her that she had the right to diversify 25% of her account balance in the Plan.  Both notices stated that the Bryants had until April 15, 2009, to make their elections and that the diversification would occur on or before June 30, 2009.  Both of the Bryants signed the forms, electing to transfer their percentages to an individual retirement account, and returned them to Wes Dodd ("Dodd"), the Plan

---

[3] The parties agree that the Plan qualifies as an "employee pension benefit plan" and that the Bryants were participants in the plan under the Employee Retirement Income Security Act ("ERISA").

Administrator at the time, on April 14, 2009.[4]

Dave Bryant called Dodd several times to confirm the status of their diversification requests, and each time Dodd assured him that the transfers would be completed. In September 2009, just before Dodd left Community Bankshares, he assured Dave Bryant that the transfers would be completed within the week and to call human resources if they were not.

The transfers were still not processed in October 2009. Dave Bryant contacted the new Plan Administrator, Mary Wilkerson ("Wilkerson"), who told him that the transfers would not be completed and that Dodd had "misled" the Bryants when he told them the transfers would be processed. In short, the Bryants' diversification requests were never completed.

On January 29, 2010, the Georgia Department of Banking and Finance closed CBT and named the Federal Deposit Insurance Corporation ("FDIC") as receiver. The loss of Community Bankshares's principal asset caused its privately-held stock to lose all value, which, in turn, caused the Bryants to lose the hundreds of thousands of dollars they had

---

[4] Plaintiffs' amended complaint references and relies upon several documents attached thereto, including a copy of the Plan (effective as of January 1, 2008), the diversification notices the Bryants received, and an affidavit from Dave Bryant. The Court may consider these documents, as they are central to Plaintiffs' claims and undisputed. *See Brown v. One Beacon Ins. Co. Inc.*, 317 Fed. App'x 915, 917 (11th Cir. 2009) ("When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment."); *Arango v. U.S. Dep't of Treasury*, 115 F.3d 922, 923 n.1 (11th Cir. 1997) ("Documents attached to and incorporated into the complaint were properly before the district court on a motion to dismiss.").

invested in the Plan. Indeed, on November 2, 2009, Community Bankshares sent a letter[5] informing Plan participants that the stock held by the Plan had little or no value, that their participation in the plan was being terminated, and that they had the option to receive the cash from their account. Community Bankshares further advised the Plan participants that they would receive no other value for their accounts (other than the proposed cash distribution) and that the retained stock would be held for later distribution. By June 2011, the Plan had distributed all of its cash to the participants.

The Bryants do not allege that they filed any written applications for benefits under the Plan. Nor do they allege that they exhausted their administrative remedies before filing this suit, which is a prerequisite to filing an ERISA action in federal court. Instead, the Bryants allege that their failure to exhaust their administrative remedies is excused for a variety of reasons. First, the Bryants allege that exhaustion was futile because the Plan was terminated and no longer exists. In support of this, the Bryants allege, rather confusingly, that the Plan "is believed to have been terminated in November 2009," (Doc. #33-1, ¶21), but that, in reality, the Plan was "effectively" terminated several months later in June 2011 when its cash holdings were distributed and the stock lost its value. This, according to the Bryants, somehow denied them meaningful access to any administrative procedures that existed before November 2, 2009.

The Bryants also allege that exhaustion was futile because the Plan lacks sufficient

---

[5] The Bryants claim that this letter was attached as Exhibit 1 to Dave Bryant's affidavit; however, no such letter is before the Court.

resources to provide them with adequate relief without intervention by the Court. Finally, the Bryants allege that they were not adequately informed of the appeals process and that there is no current administrator to which they could submit an appeal following the plan's termination, thus excusing their failure to comply with the exhaustion requirement.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are sufficient "enough to raise a right to relief above the speculative level, on the assumption that allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the grounds for his or her entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545. A district court must "view all the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003).

## III.  DISCUSSION

Defendants seek dismissal of the Bryants' action[6] because they admittedly failed to exhaust their administrative remedies under the Plan before they filed the instant suit, and

---

[6] All of the claims in the Bryants' three-count lawsuit are ERISA claims. (Doc. #33-1.)

they have likewise failed to allege a sufficient excuse for this failure. (Doc. #34.) In the Eleventh Circuit, a plaintiff must exhaust a plan's administrative remedies before filing an ERISA lawsuit. *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1314 (11th Cir. 2001). A district court, however, may dispense with the exhaustion requirement "when resort to administrative remedies would be futile or the remedy inadequate," *Counts v. Amer. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997), or where a claimant is denied "meaningful access" to the administrative review scheme, *Curry*, 891 F.2d at 846–47. The decision to dispense with the exhaustion requirement is within the sound discretion of the district court. *McPhillips v. Blue Cross Blue Shield of Ala.*, 2010 WL 3833950, at *4 (M.D. Ala. Sept. 23, 2010). Thus, to overcome Defendants' motion to dismiss, the Bryants must "make a 'clear and positive showing of futility.'" *Engelhardt v. Paul Revere Life Ins. Co.*, 77 F. Supp. 2d 1226, 1233 (M.D. Ala. 1999) (quoting *Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)).

After reviewing the amended complaint, the parties' arguments, and the relevant authority, the Court is satisfied that the Bryants have failed to sufficiently allege a futility exception to the exhaustion requirement. First, the Bryants were not denied "meaningful access" to the administrative review process. To the contrary, the Bryants had a copy of the Plan, including its grievance and appeal procedures, and have never denied having a copy of the Plan. While the Bryants claim that they did not receive any instruction on the Plan's

procedures since January 2008 and that they were "unaware" of any administrative process that needed to be exhausted before filing a lawsuit, this does not "clearly and positively" equate to being denied "meaningful access" to the administrative review process.  The Bryants do not allege that the Plan's language itself caused them to reasonably believe that they did not have to comply with the exhaustion requirement.  *See Watts v. BellSouth Telecomm., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003) (holding that a claim should not be barred if the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit).  Nor do the Bryants allege that they attempted to file an appeal or grievance of some sort, only to be denied or otherwise affirmatively blocked from pursuing their administrative remedies under the Plan.  *See Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1319 (11th Cir. 2000) (rejecting argument that appellants were denied meaningful access to the administrative review procedures when none of the appellants ever made an attempt to pursue those remedies).  The Court is also unpersuaded that the Bryants were somehow "lulled" into not pursuing their administrative remedies because a high ranking Community Bankshares officer told Mr. Bryant sometime after November 2009—several months after their claims arose—that the Plan "was being" terminated, or because the Bryants were unaware of who the Plan administrator was from the time their participation in the Plan was terminated in November 2009 until the cash assets were distributed in June 2011.  (Doc. #33-1, Ex. D.)  In sum, the Bryants have failed to sufficiently allege a lack of "meaningful access" to the Plan's administrative review

procedures such that their failure to exhaust should be excused.

The Bryants also cannot demonstrate futility by alleging that the Plan lacked assets and, therefore, an adequate remedy could not be afforded to the Bryants if they pursued administrative remedies under the Plan. In fact, the Court is not aware of any Eleventh Circuit precedent excusing the exhaustion requirement as futile based on the diminished value of a plan's assets, particularly where, as here, the plaintiffs had months, if not years, to pursue their administrative remedies under the plan before its assets were distributed or lost their value. *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217 (11th Cir. 2007) (holding that the plaintiffs were required to exhaust their administrative remedies without considering the decrease in value of a plan's assets); *Swetic v. Cmty. Nat. Bank Corp.*, 2010 WL 2220248, at *4 (M.D. Fla. June 2, 2010) (recognizing that the plaintiff had pointed "to no authority suggesting that the value of the Plan's assets should be considered by a court in determining futility").

In short, the Bryants could have pursued their administrative remedies after they learned that their diversification requests had not been completed by June 30, 2009. They could have done this before November 2009, when their participation in the Plan was terminated (and when, at least according to some of the Bryants' allegations, the Plan itself was terminated), or before June 2011, when the remaining cash assets in the Plan were distributed and the Plan was "effectively" terminated. They Bryants chose not to and have not clearly and positively demonstrated to the Court that it would have been futile for them

8

to do so.[7]  Accordingly, the Court will not excuse the Bryants from the Circuit's strict exhaustion prerequisite to filing an ERISA lawsuit in this Court.

## IV.  CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendants' motion to dismiss amended complaint (Doc. #34) is GRANTED, and the Bryants' claims in this action are DISMISSED without PREJUDICE so that they may pursue their administrative remedies.

DONE this the 3rd day of March, 2014.

　　　　　　　　　　　　　　　　　　/s/ Mark E. Fuller
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[7] The Court is not unmoved by the Bryants' current predicament, as they have lost the majority of the value of their retirement accounts through the Plan.  The fact of the matter is, however, that sympathy does not obviate the well-settled law in this Circuit that a plaintiff must exhaust their administrative remedies, or "clearly and positively" demonstrate that it **would have been** futile for them to do so, **before** they pursue an ERISA claim.  In the Court's opinion, the Bryants have failed to meet this burden.